IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                           **Case No. 10-40108-01-RDR**

AMIE ELIZABETH ARD,

        Defendant.

## MEMORANDUM AND ORDER

This order is issued to record the court's rulings upon the sentencing issues raised in this case. There are two major issues raised by the parties: 1) the amount of loss; and 2) whether to grant a downward variance. This order shall also set forth the restitution and forfeiture judgments in this case.

Defendant has pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. Defendant has admitted that as store manager of store #44 for Wood Oil Company she falsified records which were transmitted in interstate commerce as part of a scheme to defraud or obtain money from the store under false pretenses. The count to which defendant pleaded guilty alleges that defendant represented that she paid out or reserved $12,300.00 for loading into the two ATM machines at the store, when in fact that was not the true amount placed into the ATM machines. This criminal conduct was part of a continuing practice of embezzlement which took place over the course of several months. Of course, in

calculating loss under the Sentencing Guidelines, the district court does not limit itself to conduct underlying the offense of conviction, but rather may consider all of defendant's "relevant conduct."  U.S.S.G. § 1B1.3.  "Relevant conduct" means conduct which is sufficiently similar and within the same temporal proximity, it may be considered relevant for purposes of determining the guideline range.  See U.S. v. Caldwell, 585 F.3d 1347, 1350 (10th Cir. 2009) cert. denied, 131 S.Ct. 209 (2010).  The "Background" portion of U.S.S.G. § 1B1.3 specifically advises that: "in an embezzlement case . . . embezzled funds that may not be specified in any count of conviction are nonetheless included in determining the offense level if they were part of the same course of conduct or part of the same scheme or plan as the count of conviction."

     The evidence before the court indicates that defendant worked for Wood Oil Company from October 11, 2004 to October 2008 at store #44.  This store sold gas and convenience shop items on the Kansas Turnpike.  Defendant became the store manager on November 7, 2007.  According to the testimony of FBI Agent Scott Gentine, defendant told the FBI that she discovered a flaw in the accounting procedures of the store.  As store manager she was responsible for filling out daily logs or inventory control sheets which would list, among other matters, how much money was set aside from the store's receipts to fill the two ATM machines.  The store manager

2

also loaded the ATM machines and recorded in each machine how much money was placed inside. The machine would produce an ATM tape which stated how much money was loaded into the machine. According to the evidence before the court, the ATM machines did not have counters which calculated the amount of cash placed into the machine. That number was entered by the person loading the machine. When no money was placed into the ATM machines, no ATM tape was produced for that day. Defendant told the FBI that the ATM tapes were accurate and the FBI assumed the tapes were accurate for the purposes of its analysis of the amount of loss.

Wood Oil Company offices received copies of the daily logs and the ATM tapes. According to Agent Gentine, defendant told him the flaw she discovered in Wood Oil Company's internal controls was that the daily logs were not reconciled with the ATM tapes to determine whether the amount of money allegedly set aside to load the ATM machines was actually loaded. Defendant admitted that she stole money from the store and falsely represented in the daily logs that the money was set aside for the ATM machines.

The question for the court's decision is how much money did defendant steal. Defendant first told Agent Gentine that she took $40,000.00 to $50,000.00. Later, she said the amount could have been as much as $130,000.00. The government has contended the figure is approximately $466,440.00, which is the amount of loss used in the presentence report to determine the guideline range and

the amount of restitution.  Defendant has objected to this figure on the grounds that other persons may have been responsible for the loss.

When a defendant challenges the loss amount in the presentence report, the government bears the burden of proving that amount by a preponderance of the evidence.  U.S. v. Griffith, 584 F.3d 1004, 1011 (10th Cir. 2009).  "Where evidence of direct loss is not available, the district court "need only make a reasonable estimate of the loss."  U.S.S.G. § 2B1.1, cmt. n.3(C).

There are at least four estimates of the loss incurred by Wood Oil Company during the approximate time when defendant was manager of store #44 and was stealing from her employer.  One estimate from Anthony Kramer, a certified public accountant, is $495,050.00.  See exhibits 6 and 7.  Mr. Kramer admitted, however, that he did not attempt to decide who was responsible for the loss.  Another estimate from the FBI is $465,280.00 which represents a slight modification of its original estimate of $466,440.00.  See exhibit 1A.  This estimate focuses upon the daily logs signed by defendant, as opposed to daily logs signed by other Wood Oil Company employees, and the discrepancies between those logs and the ATM tapes.  An estimate done by an investigator for defendant, which uses the same method of calculation used by the FBI but attempts to look at _all_ of the daily logs and ATM tapes over the same time period regardless of which employee signed the documents, places

the loss at $558,420.00.  See exhibit 401.  According to paragraph 27 of the presentence report, Wood Oil Company has declared a loss in the amount of $576.652.00.  The court has little explanation or evidence regarding this last estimate.  So, from the accounting estimates available to the court, Wood Oil Company lost more than $400,000.00 at store #44 during the period of time that defendant was the manager of the store and was stealing some of the money. But, defendant has admitted to stealing no more than $130,000.00.

It should be noted that of all the days from March 1, 2008 to September 30, 2008 where the daily logs were compared to ATM tapes in defendant's exhibit 401, there were only eight days when there was zero difference between the daily logs and the ATM tapes.  And only three of the days were situations in which a positive amount of money was reserved for the ATMs according to the daily logs and the same amount was placed in the ATMs as reflected in the ATM tapes.  The other five days showed no money reserved for the ATMs and no money placed in the ATMs.  There were many days when the ATM tapes showed that more money was placed in the ATM machines than was reserved from that day's receipts for the ATM machines.  This may be because the ATM machines were not loaded every day.  So, it is possible that there was more money held in reserve to load the ATM machines than what was taken out of one day's receipts.  If the ATM machines were not loaded for a certain day, there was no ATM tape to compare with a daily log, and the daily accounting exhibits

provided to the court show that no money was placed in the ATM machines. See Exhibits 1, 1A and 401.

The large amounts of loss represented in Exhibits 1, 1A, and 401 reflect the total difference over a seven-month period between the amounts of money reserved for the ATM machines according to the daily logs and the amounts of money actually placed in the ATM machines according to the ATM tapes. Thus, even though on many days more money was placed in the ATM machines than was supposedly reserved for that purpose from the day's receipts, there was a large negative discrepancy over a period of seven months.

Amount of loss

What is the amount of the loss for which defendant is responsible? As already noted, defendant has admitted her responsibility for approximately $130,000.00 of the loss after initially saying she stole $40,000.00 or $50,000.00. To Agent Gentine, she admitted stealing as often as three times a week, or more if needed. Agent Gentine stated that defendant was "churning vehicles" that were purchased with stolen cash and that lots of money was going through her bank account. Defendant was working with an unidentified person to buy vehicles at a rate the State of Kansas could not keep up with, according to Agent Gentine. As part of the investigation of this case, some vehicles were seized and sold. Money was seized from defendant's bank account as well. However, the money retrieved or accounted for is less than

$130,000.00.  If defendant stole more than $400,000.00, it is not clear where the money went.

Defendant obviously had access to the ATM machines and to the safe where money was stored to be placed in the ATM machines.  So did a regional manager.  Two assistant store managers also had access to the ATM machines when defendant took days off.  They also had access to the safe, as did other employees.  There is no evidence that other employees took money from the store, other than the same kind of discrepancies between daily logs they prepared and the amounts of money loaded into the ATM machines as set forth in the ATM tapes.  There is no evidence that other employees did not take money from the store, other than an absence of any specific evidence or accusation from defendant, Wood Oil Company, or law enforcement - - persons or entities who would have a reason to know or find out.

"The Supreme Court has recognized a 'longstanding principle that sentencing courts have broad discretion to consider various kinds of information' relevant to the sentencing decision." U.S. v. Scott, 529 F.3d 1290, 1298 (10th Cir. 2008) (citing U.S. v. Watts, 519 U.S. 148, 151 (1997)).  "[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." U.S. v. Tucker, 404 U.S. 443, 446 (1972).  This principle is followed at 18 U.S.C. § 3661 which provides that "[n]o

7

limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  See also FED.R.EVID. 1101(d) (federal rules of evidence do not apply to sentencing proceedings); U.S. v. Breedlove, 2011 WL 2581459 (5th Cir. 6/30/11) (Rule 404(b) does not apply to sentencing proceedings).  "Due process requires only that 'some evidentiary basis beyond mere allegations' support the sentencing court's findings, United States v. Smith, 887 F.2d 104, 108 (6th Cir. 1989), and that sentences not be 'imposed on the basis of "misinformation of constitutional magnitude."'"  U.S. v. Chaikin, 960 F.2d 171, 174 (D.C. Cir. 1992) (quoting Roberts v. United States, 445 U.S. 552, 556 (1980)).

The court believes a preponderance of the evidence supports a finding that defendant stole $465,280.00.  Defendant admitted that as store manager she stole money from the store and covered up her thievery in the daily logs by recording that the money was reserved for the ATM machines.  Over a period of months when the daily logs signed by defendant were compared with the ATM tapes which defendant told the FBI were accurate, there was a discrepancy of $465,280.00.  Although this total may not be exactly right, it is a reasonable estimate of the amount of loss attributable to defendant.  Defendant contends that the estimate is not reasonable

8

because she only took $130,000.00 and other employees had the opportunity to steal from the store in the same or similar manner. It would be speculation to blame other employees for the discrepancies in the daily logs signed by defendant. It is not speculation to blame defendant for these amounts because: 1) defendant has admitted to taking money and covering it up in this fashion, and the amounts which she has not admitted to stealing are consistent with her modus operandi; 2) defendant stated that the ATM tapes were accurate - when these tapes are compared with the daily logs defendant signed, it produces the approximate amount of loss found by the court; 3) there is no convincing reason to believe defendant's estimate of $130,000.00 was much more considered and accurate than her first estimate of $40,000.00 to $50,000.00; 4) there is testimony that she was "churning" vehicles at a high rate and was working with another person to purchase vehicles with the stolen money; 5) given her position as store manager she had more frequent access to and responsibility for the loading and operation of the ATM machines than other employees at the store.

In light of this amount of loss finding, the Sentencing Guidelines range for defendant is 27 to 33 months.

<u>Downward variance</u>

Pursuant to 18 U.S.C. § 3553(a), the court must impose a sentence "sufficient, but not greater than necessary, to comply

9

with the purposes set forth" within § 3553(a)(2) considering:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for-
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines....
> (5) any pertinent policy statement-
>    (A) issued by the Sentencing Commission....
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

Defendant has argued that a downward variance is justified in this case for a variety of reasons. Defendant notes that she is a single mother of a 12-year-old daughter. Defendant has been poor throughout her life, working menial jobs (sometimes more than one at a time) to support herself and her family. She has a history of mental health issues, including bipolar disorder, and has abused alcohol in the past, but not controlled substances. She has no criminal history. This, together with her employment background and lack of a drug history, suggests that there is a low chance of recidivism. The court has reviewed several letters written in

support of defendant.  Defendant further argues that the less time she is in prison, the more time and opportunity exists for her to make restitution.  Defendant also contends that the amount of loss table for fraud cases is not a product of the Sentencing Commission's institutional expertise and should not be given very much weight by the court.  In light of all of these arguments and facts, defendant asks for a sentence of probation as the best way to fulfill the purposes of § 3553.

After a careful consideration of this matter, the court believes that a downward variance to a sentence of 15 months would produce a sentence that is sufficient but not greater than necessary to accomplish the sentencing objectives of § 3553.  The court believes that a sentence of incarceration is necessary to provide a deterrent to others, to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment to defendant.  But, the court believes a greater sentence is too severe given the factors in defendant's background (lack of criminal history, steady employment, no illegal drug use) which indicate a low chance of recidivism.  The court is also influenced by defendant's family situation and the letters written in her support. After due consideration of the relevant sentencing factors, the court has concluded that 15 months is an appropriate sentence in this case.

Restitution

Under 18 U.S.C. § 3663A, the court must order that defendant make restitution to the victims of an offense committed by fraud or deceit. The Tenth Circuit has stated that a restitution order must be "'specific in a dollar amount that is supported by evidence in the record' but that 'the determination of an appropriate restitution is by nature an inexact science,' so that absolute precision is not required." U.S. v. James, 564 F.3d 1237, 1247 (10th Cir. 2009) (quoting U.S. v. Williams, 292 F.3d 681, 688 (10th Cir. 2002)). "A sentencing court may resolve restitution uncertainties 'with a view towards achieving fairness to the victim,' so long as it still makes a 'reasonable determination of appropriate restitution,' rooted in a calculation of actual loss." U.S. v. Gallant, 537 F.3d 1202, 1252 (10th Cir. 2008) cert. denied, 129 S.Ct. 2026 (2009) (quoting U.S. v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997)). The court must not order restitution for "speculative" losses. U.S. v. Serawop, 505 F.3d 1112, 1123 (10th Cir. 2007). "[T]he purpose of restitution 'is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.'" Id. at 1124 (quoting, U.S. v. Hudson, 483 F.3d 707, 710 (10th Cir. 2007)). The government bears the burden of proving the amount of loss by a preponderance of the evidence. U.S. v. Masek, 588 F.3d 1283, 1287 (10th Cir. 2009).

For the reasons explained above, the court finds that the

government has proven that defendant stole $465,280.00 from Wood Oil Company. There is evidence that $31,648.00 has been returned to the victim from money or assets seized from defendant. Therefore, restitution in the amount of $433,632.00 shall be ordered in this case.

### Forfeiture

The government is entitled to a money judgment against defendant for the money she obtained from her criminal activity. "'[R]estitution is calculated based on the victim's loss, while forfeiture is based on the offender's gain.'" U.S. v. McGinty, 610 F.3d 1242, 1247 (10th Cir. 2010) (quoting U.S. v. Webber, 536 F.3d 584, 603 (7th Cir. 2008)). Based upon the evidence described previously, the court finds that defendant's gain in this case is $433,632.00. A forfeiture judgment is hereby ordered in that amount in favor of the government and against defendant.

### Conclusion

In conclusion, the court shall sentence defendant to a term of 15 months with a two-year term of supervised release and a special assessment of $100.00. The court shall also enter a restitution judgment in the amount of $433,632.00 and a forfeiture judgment in the same amount against defendant.

**IT IS SO ORDERED.**

Dated this 14th day of September, 2011 at Topeka, Kansas.

s/Richard D. Rogers

```
                              United States District Judge
```